2023-2395

(United States Patent and Trademark Office

Application Serial Number 29/685,345)

---

*UNITED STATES COURT OF APPEALS*

*for the*

*FEDERAL CIRCUIT*

---

IN RE BONNIE IRIS McDONALD FLOYD

*Appellant*

---

Appeal from the United States Patent and Trademark Office

Patent Trial and Appeal Board

Jennifer S. Bisk, Administrative Patent Judge

---

CORRECTED BRIEF FOR APPELLANT

(Corrected in response to NOTICE OF NON-COMPLIANCE  of January 3, 2024)

Michael Drew

Attorney at Law

1814 SmokeRise Summit

Stone Mountain, GA 30087

(770) 714-6747

*Attorney for Appellant*

January 10, 2024

---

## <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel for Appellant certifies the following:

1.      The full name of the sole party in this case, who is represented by me, is:

Bonnie Iris McDonald Floyd

2.      The name of the real party in interest, who is represented by me, is:

Bonnie Iris McDonald Floyd

3.      All parent corporation and any publicly held companies that own 10 percent or more of the stock of the real party in interest represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the parties now represented by me in the agency or are expected to appear in this court are:

Michael Drew, Attorney at Law

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................................. ii

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES ...................................................................................v

STATUTES AND RULES .....................................................................................vi

I.    STATEMENT OF RELATED CASES ........................................................1

II.   JURISDICTIONAL STATEMENT ..............................................................1

III.  STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................2

IV.   STATEMENT OF THE CASE .....................................................................3

V.    STATEMENT OF THE FACTS ...................................................................4

VI.   SUMMARY OF THE ARGUMENT ..........................................................10

VII.  ARGUMENT..............................................................................................13

    A.    Standard of Review........................................................................... 13

    B.    The Design Invention Claimed in Appellant's '345 Design Application Is Entitled to the Benefit of the Filing Date of Appellant's '938 Utility Application Under the Letter of the Law of 35 U.S.C. §120 and 35 U.S.C. §112 ...................................................................... 14

    C.    Case Law of this Court Supports Applicant's Priority Claim........................................... 19

D.    In the Design Subject Matter of this case, the Number of Rectangles Comprising the Design is a functional Element Not Related to Ornamentality .................................................. 21

VIII.   CONCLUSION AND STATEMENT OF RELIEF SOUGHT .....................22

ADDENDUM (with page numbers from Appendix)
Decision of the Patent Trial and Appeal Board (PTAB)
Application Serial Number 29/685,345 (ADS, Specification, Claim, Drawings)

Form 19 – CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998)............................................20

*In re Daniels*, 144 F.3d 1452, 1455 (1998) .............................................................14

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008) .......20, 21

*Purdue Pharma LP v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed.Cir.2000) ...........21

*Vas-Cath Inc. v Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).....................9, 21

## *Statutes and Rules*

28 U.S.C. § 1295 ................................................................................................... 1

28 U.S.C. § 2107 ................................................................................................... 1

35 U.S.C. § 102 ............................................................................................... 7, 24

35 U.S.C. § 103 ................................................................................................ 8, 9

35 U.S.C. § 112 ............................................... 2, 11, 12, 13, 14, 15, 19, 20

35 U.S.C. § 120 ....................................................... 2, 11, 12, 14, 19, 20

35 U.S.C. § 121 ................................................................................................. 11

35 U.S.C. § 141 .............................................................................................. 1, 3

35 U.S.C. § 142 ................................................................................................... 1

35 U.S.C. § 171 ......................................................................................... 1, 15, 19

37 C.F.R. § 1.304 ............................................................................................... 1

**Other**

Manual of Patent Examining Procedure 1502 .......................................... 16, 19

## I.     STATEMENT OF RELATED CASES

Counsel for Appellant, on behalf of Appellant, hereby confirms that no other appeal from the same proceeding in the United States Patent and Trademark Office which is the subject of the instant appeal was previously before this Court or any other appellate court. Counsel for Appellant is not aware of any case pending in this or any other tribunal that will directly affect or be affected by the Court's decision in the pending case.

## II.     JURISDICTIONAL STATEMENT

This Court has exclusive jurisdiction over the present appeal under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141. The present appeal is from a Decision on Appeal by the Patent Trial and Appeal Board (PTAB) of the United States Patent and Trademark Office (USPTO) affirming the final rejection of the claim submitted by Appellant in United States Design Patent Application Serial No. 29/685,345.

The date of the Decision on Appeal by the PTAB, which is an appealable final order, is July 6, 2023. A Notice of Appeal to this Court was timely filed and served on the United States Patent and Trademark Office on September 5, 2023, pursuant to 35 U.S.C. § 142, 37 C.F.R. § 1.304, 28 U.S.C. §2107(b), and Fed. Cir. Rule 15(a)(1).

## III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the Patent Trial and Appeal Board ("PTAB") erred in finding that the claimed design of the '345 design application was not described in an earlier application under 35 U.S.C. §112, ¶1, and, therefore, is not entitled to the filing date of the earlier filed '938 utility application under 35 U.S.C. §120.

Whether the PTAB erred in finding that the Appellant's design invention is limited to a design pattern of a specific number of objects in an array.

Whether the PTAB erred in finding that the design invention claimed in Appellant's '345 design application is not actually or inherently disclosed in Appellant's '938 utility application in compliance with 35 U.S.C. §112.

Whether the PTAB erred in finding that Appellant's '938 utility application did not convey with reasonable clarity that Appellant was in possession of the design invention claimed in Appellant's '345 design application at the time the '938 utility application was filed.

Whether the claim in Appellant's '938 utility application is a part of the written description of the specification thereof under 35 U.S.C. §112, and, as such, helps provide adequate  support under 35 U.S.C. §112 for Appellant's claim for priority under 35 U.S.C. §120.

Appellant admits that if the claimed design of the '345 design application is found not to be entitled to the filing date of Appellant's earlier '938 application,

2

then the claimed design of Appellant's '345 design application would be anticipated by Appellant's Pub. No. 20170027744.

## IV.    STATEMENT OF THE CASE

This is an appeal under 35 U.S.C. §141 from the DECISION ON APPEAL ("PTAB Decision") (Appx001-010) issued by the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO") on July 6, 2023. In that PTAB Decision, the PTAB affirmed the Final Rejection of the single claim of Design Application Serial Number 29/685,345 ("'345 design application") (Appx012-025) filed by Appellant herein as inventor.

Appellant, as Applicant in the '345 design application, filed the '345 design application as a Divisional application of inventor's/applicant's previously-filed Utility Application Serial Number 15/004,938 ("'938 utility application") (Appx097-115). Appellant asserted priority to the '938 utility application and asserted benefit of the filing date thereof under 35 U.S.C. §120. In the prosecution of the '345 design application, the USPTO Examiner ("the Examiner") disallowed Appellant's claim of priority because "the number of the rectangular portions of the blanket is different from those shown in the prior application." (Appx028). The Examiner then rejected the single substantive claim of the '345 design application as being anticipated by the disclosure of the published version of the '938 utility application.

3

If Appellant's '345 design application is able to claim the benefit of the filing date of the '938 utility application, Appellant's '938 utility application cannot be used as the basis for rejection of Appellant's '345 design application.

Appellant filed the Notice of Appeal from the PTAB Decision on September 5, 2023.

## V.    STATEMENT OF THE FACTS

Appellant filed utility application serial number 15/004,938 ("'938 utility application") for an invention entitled COOLING BLANKET FOR HUMANS AND ANIMALS on January 23, 2016. The '938 utility application was published as Publication Number US 2017/0027744 ("Pub. No. 20170027744") (Appx119-127) on February 2, 2017. The '938 utility application became abandoned on March 28, 2019.

Prior to the abandonment of the '938 utility application, Appellant filed design patent application serial number 29/685,345 ("'345 design application") (Appx012-025) on March 27, 2019, as a Divisional application of the '938 utility application. The '345 design application was directed to an invention having the same title as the invention of the '938 utility application, namely, COOLING BLANKET FOR HUMANS AND ANIMALS. The '345 design application included a claim to the benefit of priority to the '938 utility application. (Appx013).

4

The '938 utility application included the following drawings denoted Fig. 1 and Fig. 1A:



The '345 design application included the following drawings denoted Fig. 1 and Fig. 2:



**FIG.2**



**FIG.1**

1

---

[1] In response to the Examiner's inquiry regarding the wavy lines in Fig. 1 and Fig. 2, Appellant indicated that the lines simulate contours and are not a part of the claimed design. (Appx042).

In the first Office Action of the '345 design application, dated September 24, 2020, (Office Action 09/24/2020) (Appx026-031), the USPTO Examiner ("the Examiner") challenged Appellant's claim for the benefit of priority to Appellant's earlier-filed '938 utility application.  The Examiner required that Appellant delete the claim for priority "because [the] application [contained] the following matter not disclosed in the prior-filed application: … the  number of the rectangular portions of the blanket is different than these shown in the prior application." [2] Once the Examiner took the position that Appellant was not entitled to the benefit of the priority date of the '938 utility application, the Examiner then cited the published version of the '938 utility application, namely, Publication Number: US 2017/0027744 ("Pub. No. 20170027744 A1") (Appx119-127), as the basis for rejecting the subject matter claim of the '345 design application for this present matter.  The Examiner stated:

> The claim is rejected under 35 U.S.C. 102(a)(1) as being anticipated
>
> by the cooling blanket in applicant's own US 2017002744 A1 because
>
> the claimed invention was patented, described in a printed publication,

---

[2] The Examiner also objected to the side view of Fig. 4.  Applicant obviated this ground for rejection of the priority claim by amending the application to claim only the features shown in the perspective and plan views of Fig. 1 and Fig. 2. (Appx042).

or in public use, on sale or otherwise available to the public before the

effective filing date of the claimed invention.

In support of the use of the anticipation finding, the Examiner stated "The

appearance of the cooling blanket in applicant's prior utility application is

substantially the same as that of the claimed design."

In the second, and Final Rejection, Office Action dated March 31, 2021,

("Office Action of 03/31/2021") (Appx047-053), the Examiner repeated and

maintained the refusal to accept Appellant's claim for priority to the '938

application and repeated the rationale stated above, namely, "because [the]

application [contained] the following matter not disclosed in the prior-filed

application: … the  number of the rectangular portions of the blanket is different

than these shown in the prior application."

Appellant appealed the Final Rejection to the Patent Trial and Appeal Board

(PTAB") of the USPTO.  Appellant's appeal to the PTAB was designated Appeal

2022-004172.  The PTAB issued a decision on July 6, 2023, that affirmed the

Examiner's disallowance of Appellant's claim for priority to the '938 utility

application and the Examiner's rejection of the claim in the application based upon

35 U.S.C. 102(a)(1). (Appx001-010). In the Office Action of 09/24/2020, the

Office Action of 03/31/2021, the Examiner also rejected the substantive claim

under 35 U.S.C. 103 as being unpatentable over Pub. No. 20170027744 A1 in view

of foreign patent document of inventor Wackenhuth identified by number

designation AT 250619 B ("Wackenhuth") (Appx032-036). The PTAB reversed

the 35 U.S.C. 103 rejection based upon Wackenhuth. In its decision supporting the

denial of Appellant's claim of priority to the '938 utility application, the PTAB

stated "In summary, nothing in the '938 application leads to the precise visual

appearance represented in the 6x5 array configuration claimed here." The PTAB

further stated:

> Accordingly, on this record, we agree with the Examiner that the '938
>
> application does not convey with reasonable clarity that, as of the
>
> filing date sought by Appellant, the inventor was in possession of the
>
> particular blanket design now claimed. *Vas-Cath Inc. v Mahurkar*,
>
> 935 F.2d 1555, 1563 (Fed. Cir. 1991)

## VI.    SUMMARY OF THE ARGUMENT

Essentially, there is a single issue that is central to this case, namely, whether these drawings from Appellant's utility application, the '938 utility application,



plus the Specification of the '938 utility application supports the priority claim in Appellant's '345 design application for the invention illustrated in these drawings:



FIG.2

FIG.1

It is well-settled law that a design patent application is entitled to the priority-claiming benefits of 35 U.S.C. §§120 and 121. These code sections sometimes herein may be referred to as "§120" or "section 120" and "§121" or "section 121." Under these code  sections, when a design patent application claims priority from a utility parent application, case law from the courts including the Court of Appeals for the Federal Circuit ("CAFC" or "this Court") and its predecessor court, the Court of Custom Claims and Patent Appeals ("CCPA") have rendered decisions affirming that design applications have the rights to claim priority to utility applications and have clarified that the drawings of a prior utility application help satisfy the "written description" requirement under 35 U.S.C. §112 ("§112" or "section 112") that is essential for claiming priority under §120.

Under any objective standard set forth under US patent statutory law or judicial interpretations of US patent statutory law the blanket claimed by Appellant in the '345 design application is supported by the requisite disclosure in Appellant's '938 utility application.

Under the plain letter of the law of §§120 and 112, the '938 utility application discloses and describes the invention illustrated and claimed in the '345 design application. Only an impermissible restrictive reading of the applicable law and court cases could justify the Examiner's refusal to accept Appellant's claim of priority.

Another fallacy in the Examiner's disallowance of Appellant's claim for priority is the Examiner's imposition of a rigid numerical limit to the rectangular objects that form the pattern blankets in Appellant's blankets. The ornamental design of the '345 design application is manifested in a pattern comprising rectangular objects set off by a cross-hatching of apertured narrow channels. The disclosure of the '938 utility application does not describe any limitations as to the number of objects that comprise the pattern formed. If anything, the disclosure contains expansive language. The Examiner did not identify anything in the '938 utility application or in patent law would validate the imposition of a numerical component requirement as an element of the pattern disclosed.

This Court has set forth at least two tests for sufficiency of disclosure of a parent application necessary to support a claim for priority in a later-filed application.  One test may be denoted as an "inherency" test. Stated succinctly, the inherency standard may be stated as whether the written description of the parent disclosure actually or inherently discloses the claim element of the later-filed application.  Another test may be denoted as the "in-possession test," that is, whether the disclosure of the prior application conveys with reasonable clarity that the inventor was in possession of the invention later claimed.

The Examiner's disallowance of Appellant's claim for priority can only be validated by ignoring settled patent law and ignoring the plain language and drawings of the disclosure of the '938 utility patent application.  The invention of the '938 utility patent application includes a multiplicity of arrays, and there is nothing in the '938 utility application that limits the features of the invention including its ornamental features to only the two embodiments illustrated, thus the design subject matter incorporated in the invention of the '938 utility application also extends to a multiplicity of arrays as described in the '938 utility application.

## VII.   ARGUMENT

### A.     Standard of Review

Compliance with the "written description" requirement of Section 112 is a question of fact to be reviewed by this Court under the "clearly erroneous"

standard. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563. (1991). Entitlement to

priority under §120 is a matter of law, and receives plenary review on appeal. *In re*

*Daniels*, 144 F.3d 1452, 1455 (1998).

**B.     The Design Invention Claimed in Appellant's '345 Design**

**Application Is Entitled to the Benefit of the Filing Date of Appellant's**

**'938 Utility Application under the Letter of the Law of 35 U.S.C. §120**

**and 35 U.S.C. §112.**

The ability of an applicant for a US patent to claim the benefit of the filing

date of an earlier-filed related patent application is governed by 35 U.S.C. §120.

§120 reads as follows:

> 35 U.S. Code § 120 - Benefit of earlier filing date in the United States
> An application for patent for an invention disclosed in the manner
> provided by section 112(a) (other than the requirement to disclose the
> best mode) in an application previously filed in the United States, or
> as provided by section 363 or 385, which names an inventor or joint
> inventor in the previously filed application shall have the same effect,
> as to such invention, as though filed on the date of the prior
> application, if filed before the patenting or abandonment of or
> termination of proceedings on the first application or on an application
> similarly entitled to the benefit of the filing date of the first
> application and if it contains or is amended to contain a specific
> reference to the earlier filed application. No application shall be
> entitled to the benefit of an earlier filed application under this section
> unless an amendment containing the specific reference to the earlier
> filed application is submitted at such time during the pendency of the
> application as required by the Director. The Director may consider the
> failure to submit such an amendment within that time period as a
> waiver of any benefit under this section. The Director may establish

procedures, including the requirement for payment of the fee specified in section 41(a)(7), to accept an unintentionally delayed submission of an amendment under this section.


Related §112(a) reads as follows:

35 U.S. Code § 112 – Specification
(a)IN GENERAL.—
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention. (b)CONCLUSION.—
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.


The ability of an inventor to obtain a design patent is governed by 35 U.S.C.

§171, which reads:

35 U.S. Code § 171 - Patents for designs
(a)In General.—
Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.
(b)Applicability of This Title.—
The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.
(c)Filing Date.—
The filing date of an application for patent for design shall be the date on which the specification as prescribed by section 112 and any required drawings are filed.

15

The Manual of Patent Examining Procedure ("MPEP") of the USPTO which provides guidance to USPTO examiners and to the public in general helps define what is considered subject matter for a design patent application. MPEP section 1502 Definition of a Design contains the following language:

> The design for an article consists of the visual characteristics embodied in or applied to an article.
> Since a design is manifested in appearance, the subject matter of a design patent application may relate to the configuration or shape of an article, to the surface ornamentation applied to an article, or to the combination of configuration and surface ornamentation.

The drawings and claim of Appellant's '345 design application fulfill all of the requirements for setting forth proper subject matter and properly claiming priority to Applicant's '938 utility application under the letter of the statutory law quoted above and MPEP guidance which is based upon codified and judicially-derived law.

The '345 design application illustrates a blanket for which protection is sought as follows:



FIG.2

FIG.1

Appellant's '345 design application contains a single claim that reads: "I claim: The ornamental design for a Cooling Blanket for Humans and Animals, as shown and described."

Appellant's '938 utility application from which the '345 design application clams priority includes the following drawings:



Paragraph 25 of Pub. No. 20170027744, the published version of the '938 application, contains the following language: "As illustrated in FIGS. 1 and 1A, the embodiment can be made in any size suitable for cooling the body core, or entire body, of any human or animal."

Paragraph 26  of Pub. No. 20170027744, the published version of the '938 application, contains the following language: "While my description contains many specifications, these should not be construed as limitations on the scope, but rather as an exemplification of several embodiments.  Many other variations are possible."

Subparagraph "a" of Claim 1 of the '938 utility application reads as follows:

The embodiment of claim 1, wherein two layers of material large enough to cover the body core of an adult and made up of one or more sheets of various materials are connected at the edges and at intervals

18

to form seams, bonds, or welds and *individualized compartments in plurality* [emphasis added]

The disclosure of the '938 utility application does not in any way limit the disclosure of the blanket to restrict the invention or its applicable elements to include only the specific number of rectangular objects shown in FIGS. 1 and 1A. The applicable statutory authority cited (35 U.S.C. §§112, 120, and 171, and MPEP section 1502 that are cited herein do not in any way contain language that would require limiting the plain meaning of the disclosure of a patent application upon which priority is claimed. The Examiner, as affirmed by the PTAB, only recites an unsupported conclusory statement that the later filed '345 design application is not entitled to a benefit of priority under the '938 utility application solely because the number of constituent elements forming the patterns of arrays differ. No authority is cited to support such a determination. The 6x6, 6x5, and 6x4 arrays all present the same ornamental design for the blankets of Appellant's invention. The USPTO does not articulate a legal rationale or practical rationale for finding that these three arrays convey different ornamental designs.

### C.     Case Law of This Court Supports Appellant's Priority Claim

Decisions in several cases issued by this Court espouse principles that support Appellant's claim of priority in this case.

In *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) this Court stated: "The claims as filed are part of the specification, and may provide or contribute to compliance with §112."

In *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008), this Court cited several principles applicable to the instant matter. Under the section heading "II Written Description Requirement," at page 1306, with reference to *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed.Cir.1991) , the Court stated: "To satisfy the written description requirement the disclosure of the prior application must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention.'" Applicant believes that the '938 application clearly conveys that applicant was in possession of the concept of a 6X5 array of rectangles for applicant's blanket.

While referring to several more of its previous holdings, the Court in *PowerOasis* went on to state: "While a prior application need not contain precisely the same words as are found in the asserted claims … the prior application must indicate to a person skilled in the art that the inventor was 'in possession' of the invention as later claimed." Although the '938 utility application does not include the words 6X5 array and the drawings do not illustrate a 6X5 array, the '938 utility application does specifically disclose arrays of 6X6 and 6X4 that in fact lie in

adjacent size juxtaposition with respect to a 6X5 array. The facts stated herein clearly show that Appellant was "in possession" of the concept of a 6X5 array of rectangles.

In citing its holding in *Purdue Pharma LP v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed.Cir.2000), the Court in *PowerOasis* stated: "… the disclosure does not have to provide in haec verba support in order to satisfy the written description requirement ...." This means that the '938 utility application was not required to have a verbatim reference to a 6X5 array in order for the '345 design application to have a valid priority claim to the '938 utility application.

The *PowerOasis* case notes that what is required in the application from which priority is claimed is "that the written description actually or inherently disclose the claim element" in question in the application that is claiming priority. It is easily reasoned that the '938 utility application does disclose arrays having a plurality of "individualized compartments" (rectangles) which would include a 6X5 array, and, without question, the '938 utility application "inherently" discloses a 6X5 array.

**D.    In the Design Subject Matter of This Case, the Number of Rectangles Comprising the Design Is a Functional Element Not Related to Ornamentality**

The sole basis for the refusal to accept Appellant's claim of priority to the

'938 utility application is that "the number of rectangular portions of the blanket

[in the '345 design application] is different from those shown in the prior

application." (Appx001-010; Appx012-025; Appx026-031).  In the present design

application, the number of rectangular portions used to form the blanket is an

element of functionality related to providing a blanket of sufficient size to address

a proposed use.  The ornamentality of Appellant's blanket is characterized in the

rectilinear configurations disclosed in the '938 utility application.  In the '938

utility application, two embodiments are illustrated. The blanket embodiment

illustrated in FIG. 1 of the '938 utility application is a square rectilinear

configuration. The blanket embodiment illustrated in FIG. 1A of the '938 utility

application is a rectangular rectilinear configuration.  Both embodiments illustrate

a common ornamental theme.  That ornamental theme is carried over to the '345

design application.  Thus, in the present case applying a precise numerical

requirement as to the number of "rectangular portions" that comprise Appellant's

blanket is an inappropriate focus upon a functional element.

## VIII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Appellant is entitled to claim the benefit of priority to Appellant's '938 utility application in its later-filed '345 design application because the '938 utility application provides adequate support therefor.

It is well-settled law that drawings in an earlier-filed patent application, including a utility application, are considered to be a part of the §112 written description of such earlier application that will support a claim for priority in a later-filed application under section §120. By including drawings within the meaning of the written description requirement of §112, the courts have expanded upon the language of the patent statutes to carry out the legislative intent to treat design patent subject matter equally with utility patent subject matter. The PTAB's affirmance of the limitation on the ability to pursue a design patent application in this case is contrary to the plain language of the applicable statutes and disclosure of the '938 "parent" application involved in this case. Furthermore, excluding the subject matter of the '345 application from the benefits of priority provided under patent law is contrary to the letter and intent of the statutes. In addition, the finding reached by the PTAB in affirming the Examiner is in direct conflict with the plain language of the disclosure of the '938 utility application.

Appellant seeks reversal of the PTAB's affirmance of the Examiner's refusal to accept Appellant's claim of priority to the '938 utility application and, in turn,

the Examiner's rejection of the claim of the '345 design application under 35

U.S.C. §102(a)(1).

Respectfully submitted,

/s/ Michael Drew

Attorney for Appellant

1814 SmokeRise Summit
Stone Mountain, GA
(770) 714-6747

2023-2395
(United States Patent and Trademark Office
Application Serial Number 29/685,345)

---

*UNITED STATES COURT OF APPEALS*
*for the*
*FEDERAL CIRCUIT*

---

IN RE BONNIE IRIS McDONALD FLOYD
*Appellant*

---

Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board
Jennifer S. Bisk, Administrative Patent Judge

---

ADDENDUM TO BRIEF FOR APPELLANT
(Decision of the Patent Trial and Appeal Board (PTAB))
(Application Serial Number 29/685,345 (ADS, Specification, Claim, Drawings))

Michael Drew
Attorney at Law
1814 SmokeRise Summit
Stone Mountain, GA 30087
(770) 714-6747

*Attorney for Appellant*

January 10, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/685,345 | 03/27/2019 | Bonnie Iris McDonald Floyd | | 1027 |

70256          7590          07/06/2023

MICHAEL DREW
1814 SmokeRise Summit
Stone Mountain, GA 30087

| EXAMINER |
|---|
| JOHNSON, RASHIDA MONIQUE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2916 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/06/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

*Ex parte* BONNIE IRIS McDONALD FLOYD
_____

Appeal 2022-004172
Application 29/685,345
Technology Center 2900
_____

Before DANIEL S. SONG, JENNIFER S. BISK, and
GEORGE R. HOSKINS, *Administrative Patent Judges*.

BISK, *Administrative Patent Judge*.


DECISION ON APPEAL

STATEMENT OF THE CASE

Pursuant to 35 U.S.C. § 134(a), Appellant[1] appeals from the

Examiner's decision to reject the design claim.[2]  *See* Final Act. 1.  We have

jurisdiction under 35 U.S.C. § 6(b).

We AFFRIM.

_____

[1] "Appellant" refers to "applicant" as defined in 37 C.F.R. § 1.42.  Appellant
identifies the real party in interest as Bonnie Iris McDonald Floyd.  Appeal
Br. 2.

[2] Throughout this Decision we have considered the Specification filed
March 27, 2019 ("Spec."), the Final Rejection mailed March 31, 2021
("Final Act."), the Appeal Brief filed July 27, 2021 ("Appeal Br."), the
Examiner's Answer mailed May 17, 2022 ("Ans."), and the Reply Brief
filed July 17, 2022 ("Reply Br.").

Appeal 2022-004172
Application 29/685,345

## CLAIMED SUBJECT MATTER

The claim on appeal is "[t]he ornamental design for a Cooling Blanket for Humans and Animals, as shown and described."

Figure 1 is reproduced below.



*FIG.1*

## REJECTIONS

The claim stands rejected under 35 U.S.C. § 102(a)(1) as being anticipated by Application No. 15/004,938, filed January 23, 2016 ("the '938 application")[3] and under 35 U.S.C. § 103 as being obvious over Floyd '744

---

[3] The briefing also refers to the '938 application by its publication number—US 2017/0027744 A1, published February 2, 2017—and "Floyd '744."

Appeal 2022-004172
Application 29/685,345

in view of Wackenhuth (AT 250619 B, published Nov. 25, 1966).  Final Act.
4–5.


PRIORITY DATE

The Examiner and Appellant disagree on the effective filing date of
this design claim.  The Examiner asserts that this application includes matter
not disclosed by the '938 application, to which this application claims to be
a divisional application, and, thus, should be accorded its actual filing date
of March 27, 2019.  Final Act. 2–3; Ans. 5–9.  According to the Examiner,
Figure 1 of this application shows a blanket with a 6x5 array of rectangular
segments, which was "not expressly shown" in the '938 application, and is,
therefore, new matter.[4]  Final Act. 3.

Appellant disagrees and asserts that the proper filing date is that of
the '938 application.  Appeal Br. 2–4; Reply Br. 3.  According to Appellant,
support for the claimed 6x5 embodiment can be found in the '938
application.  Appeal Br. 2–4.  In particular, Appellant contends that
Figures 1 and 1A of the '938 application, reproduced below, show both a
6x6 and 6x4 array of rectangular segments.  *Id.* at 3.

_____

[4] In the Answer, the Examiner additionally states that the claim at issue
"discloses contour lines on the rectangular segments, which appear to
represent irregular contours of the cooling blanket's surfaces" and "the
overall shapes of the rectangular, segmented portions differ between the two
applications."  Ans. 7–8.  Appellant argues that these are improperly brought
in as "additional bases for denial of the priority claim."  Reply Br. 3.  We do
not address Appellant's argument because these statements by the Examiner
do not affect our analysis.

3

Appeal 2022-004172
Application 29/685,345



Figure 1 of the '938 application, above left, shows "A top view of the cooling blanket" with 6 rows and 6 columns of rectangular segments. '938 application ¶ 12. Figure 1A of the '938 application, above right, shows "A top view of a cooling blanket in a different configuration" with 6 rows and 4 columns of square segments. *Id.* ¶ 13.

Appellant also points to portions of the '938 application stating "[a]s illustrated in FIGS. 1 and 1A, the embodiment can be made in any size suitable for cooling the body core, or entire body, of any human or animal" and "[w]hile my description contains many specifications, these should not be construed as limitations in scope, but rather as an exemplification of several embodiments . . . [m]any other variations are possible." Appeal Br. 3 (quoting '938 application ¶¶ 25, 27). Appellant argues that "[a]lthough the '938 application does not include the words 6x5 array and the drawings do not illustrate a 6x5 array," the Specification "clearly show[s] that applicant was 'in possession' of the concept of a 6x5 array of rectangles." *Id.* at 3–4.

4

Appeal 2022-004172
Application 29/685,345

We are not persuaded by Appellant's argument that the '938 application provides sufficient written description support for a design claim including the claimed 6x5 array of rectangular segments. Nothing in the disclosure of the '938 application pointed to by Appellant provides any detail as to the visual impression or ornamental design of the presently claimed cooling blanket, much less a cooling blanket having the claimed 6x5 array of rectangular segments. Indeed, the text relied upon by the Appellant encompasses any number of array configurations having any visual impression. '938 application ¶ 25 ("[T]he embodiment can be made in any size suitable for cooling the body core, or entire body, of any human or animal."). For example, the statement about "any size" could mean that the rectangular sections are of a different size, as opposed to the blanket having a different number of rectangular sections. Moreover, the drawings of the 6x6 and 6x4 array configurations are not sufficient to narrow down those options to a specific visual impression of a blanket of any other configuration other than those explicitly shown. *See In re Owens*, 710 F.3d 1362, 1369 (Fed. Cir. 2013) (stating "unclaimed boundary lines typically should satisfy the written description requirement only if they make explicit a boundary that already exists, but was unclaimed, in the original disclosure"). In summary, nothing in the '938 application leads to the precise visual appearance represented in the 6x5 array configuration claimed here.

Accordingly, on this record, we agree with the Examiner that the '938 application does not convey with reasonable clarity that, as of the filing date sought by Appellant, the inventor was in possession of the particular blanket design now claimed. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). Thus, for purposes of this decision, the effective filing date of this

Appeal 2022-004172
Application 29/685,345

design claim is March 27, 2019, and the '938 application, is properly

considered prior art.

ANTICIPATION BY THE '938 APPLICATION

The Examiner finds that "[t]he appearance of the cooling blanket in

[the '938 application] is substantially the same as that of the claimed

design." Final Act. 4. Appellant argues that this position "seem[s] to be

grossly inconsistent" with the Examiner's position on priority date. Appeal

Br. 5.

We agree with the Examiner that the standard for evaluating whether

a claim obtains the benefit of an earlier filing date is different than the

standard for evaluating anticipation. *See* Ans. 10–11. As discussed above,

for priority, the test is whether appellant had possession of the claimed

design. *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998). The test for

anticipation, on the other hand, is whether, in the eye of an ordinary observer

two designs are substantially the same. *Int'l Seaway Trading Corp. v.

Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). The Federal

Circuit has acknowledged a "subtle distinction between a written description

adequate to *support* a claim under § 112 and a written description sufficient

to *anticipate* its subject matter under § 102(b)." *Vas-Cath*, 935 F.2d at 1562.

For example, "the description of a single embodiment of broadly claimed

subject matter constitutes a description of the invention for anticipation

purposes . . . , whereas the same information in a specification might not

alone be enough to provide a description of that invention for purposes of

adequate disclosure." *Id.* (citations omitted).

6

Appeal 2022-004172
Application 29/685,345

Appellant does not point to any particular differences between the
'938 application and the claimed subject matter such that they are not
substantially the same for purposes of the ordinary observer test. *See* Appeal
Br. 4–5 (arguing only that the '938 application is not properly prior art and
that the anticipation decision is inconsistent with the priority decision);
Reply Br. 1–3 (arguing only priority and obviousness, but not mentioning
the anticipation rejection).

On this record, we are not persuaded of error in the Examiner's
anticipation rejection of the design claim.

OBVIOUSNESS OVER THE '938 APPLICATION AND WACKENHUTH

Wackenhuth is a German patent application issued November 25,
1966.  A machine translation of the text was provided for the first time, in
this record, in an Appendix submitted with the Answer.  Ans. 13.
Wackenhuth describes "a prefabricated down comforter consisting of an
upper and a lower fabric, which are connected to one another by longitudinal
and transverse quilting seams to accommodate a down filling and are
divided into individual rectangles or squares."  Wackenhuth ¶ 6.
Wackenhuth includes a figure which is reproduced below.

Appeal 2022-004172
Application 29/685,345



The Figure of Wackenhuth shows "the shell of the new down comforter."
*Id.* ¶ 17.

The Examiner finds that Floyd '744 and the claim at issue have
"design characteristics, which are basically the same . . . including a blanket
having multiple segmented rectangular portions with small circular features
around the rectangular portions." Final Act. 4. However, the Examiner also
notes differences that exist between the two designs including "the shapes of
the rectangular portions [are] rounded at the sides and corner, rather than
pointed and angular." *Id.* The Examiner states that Wackenhuth "shows a
blanket with multiple segmented rectangular portions having pointed corners
and angled sides." *Id.* at 5. According to the Examiner, it would have been
obvious to a designer of ordinary skill at the relevant time to combine Floyd
'744's blanket design with Wackenhuth.

Appellant argues that the rejection does not make clear "what features
in the Wackenhuth drawings are considered to be 'pointed corner and angled

Appeal 2022-004172
Application 29/685,345

sides.'" Reply Br. 2. Instead, Appellant asserts that "the Wackenhuth drawing appears to disclose a series of openings to channels 6 which openings have been formed in order for something called 'filling tubes' to be inserted into the openings to inject down filling into the channels 6 of the structure." *Id.* (citing Wackenhuth ¶¶ 18–20).

We agree with Appellant (*see* Appeal Br. 6; Reply Br. 2) that the Examiner has not adequately articulated the obviousness rejection, including what portion of Wackenhuth is being relied upon and how it is to be combined with the '938 application. Final Act. 4–5; Ans. 12–14. On this record, we find we cannot sustain the obviousness rejection of the claimed design.

## DECISION SUMMARY

In summary:

| Claim(s) Rejected | 35 U.S.C. § | Reference(s)/Basis | Affirmed | Reversed |
|---|---|---|---|---|
| 1 | 102(a)(1) | Floyd '744 | 1 | |
| 1 | 103 | Floyd '744, Wackenhuth | | 1 |
| **Overall Outcome** | | | 1 | |

## TIME PERIOD FOR RESPONSE

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a)(1)(iv). *See* 37 C.F.R. § 41.50(f).

## AFFIRMED

9

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | |
| | Application Number | |
| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS | |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2  (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | Remove |
| Legal Name | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Bonnie | Iris McDonald | Floyd | |

| Residence Information (Select One) | ● US Residency | Non US Residency | Active US Military Service |

| City | Baton Rouge | State/Province | LA | Country of Residence | US |

**Mailing Address of Inventor:**

| Address 1 | 3025 Twelve Oaks Avenue |
| Address 2 | |
| City | Baton Rouge | State/Province | LA |
| Postal Code | 70820 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    [Add]

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 70256 |
| Email Address | michaeldrew@bellsouth.net | [Add Email] [Remove Email] |

## Application Information:

| Title of the Invention | COOLING BLANKET FOR HUMANS AND ANIMALS | |
| Attorney Docket Number | | Small Entity Status Claimed ☒ |
| Application Type | Nonprovisional | |
| Subject Matter | Design | |
| Total Number of Drawing Sheets (if any) | 3 | Suggested Figure for Publication (if any) | 1 |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | |
|---|---|---|
| | Application Number | |

| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| | |
|---|---|
| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 70256 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▼ | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Division of ▼ | 15004938 | 2016-01-23 |

| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add |
|---|---|

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | |
| | Application Number | |

| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | |
| | Application Number | |
| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS | |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**:  This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application.  After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s).  Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1.  Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2.  Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐    A.  Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐    B.  Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | |
| | Application Number | |
| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS | |

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** | 1                                                            [ Remove ]

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[ Clear ]

| Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

[                                                                    ▼]

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.    ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
| [ ▼] | | | | [ ▼] |

**Mailing Address Information For Applicant:**

| **Address 1** | |
| Address 2 | |
| **City** | | **State/Province** | |
| **Country** | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    [ Add ]

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

Appx016

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | |
| | Application Number | |

| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS |

---

**Assignee**  1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

[Remove]

If the Assignee or Non-Applicant Assignee is an Organization check here. ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
| **Address 2** | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.  [Add]

---

**Signature:**  [Remove]

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the** INITIAL **filing of the application and either box A or B is** not **checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /Michael Drew/ | | Date  (YYYY-MM-DD) | 2019-03-27 |
|---|---|---|---|---|
| First Name | Michael | Last Name | Drew | Registration Number | 30,832 |

Additional Signature may be generated within this form by selecting the Add button.  [Add]

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | |
| | Application Number | |

| Title of Invention | COOLING BLANKET FOR HUMANS AND ANIMALS |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.2.13

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that:  (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

DESIGN PATENT APPLICATION

COOLING BLANKET FOR HUMANS AND ANIMALS

PREAMBLE

Be it known that I, Bonnie Iris McDonald Floyd, have invented a new, original, and ornamental design for a COOLING BLANKET FOR HUMANS AND ANIMALS, to be used to cover the core body area of a human or animal and lower the body temperature of said human or animal, of which the following is a specification, reference being had to the accompanying drawings.

CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims priority from US Nonprovisional Utility Patent Application Number 15/004,938, filed January 23, 2016.

DESCRIPTION OF THE FIGURES OF THE DRAWINGS

Fig. 1 is a perspective view of a Cooling Blanket for Humans and Animals showing my new design;

Fig. 2 is a top plan view thereof, the top and the bottom having the same appearance;

Fig. 3 is an end elevational view thereof, both ends having the same appearance; and

1

Fig. 4 is a side elevational view thereof, both sides having the same appearance.

CLAIM

I claim:

The ornamental design for a Cooling Blanket for Humans and Animals, as shown and described.



*FIG.1*



**FIG.2**



FIG.3

FIG.4

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2395

**Short Case Caption:** In re: Floyd

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes 4612 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/10/2024

Signature: /s/Michael Drew

Name: Michael Drew

Save for Filing