2023-2395
(Application Serial No. 29/685,345)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**In re: Bonnie Iris McDonald Floyd,**
Appellant.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board

**BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE**

FARHEENA Y. RASHEED
*Acting Solicitor*
AMY J. NELSON
*Acting Deputy Solicitor*
WILLIAM LAMARCA
*Senior Counsel for IP Litigation*
BRIAN RACILLA
*Associate Solicitor*
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450

*Attorneys for the Director of the U.S.
Patent and Trademark Office*

March 21, 2024

## REPRESENTATIVE CLAIM ON APPEAL



**FIG.1**

Appx23; Appx60 (replacement sheet).

# TABLE OF CONTENTS

I.    STATEMENT OF THE ISSUE ............................................................... 1

II.   STATEMENT OF THE CASE ............................................................... 2

   A.   The '345 Design Patent Application ............................................. 3

   B.   The '938 Utility Patent Application ............................................. 4

   C.   The Board's Decision ................................................................... 6

III.  SUMMARY OF THE ARGUMENT ....................................................... 9

IV.  ARGUMENT .................................................................................. 11

   A.   Standard of Review .................................................................... 11

   B.   Substantial Evidence Supports the Board's Findings that the '938 Utility Application Does Not Provide Adequate Written Description Support for the Design Claimed in the Later '345 Design Application ................... 12

      1.  For design claims, written description must be demonstrated in the designs depicted in the application ............................................ 12

      2.  Substantial evidence supports the Board's findings that the blankets with differing configurations depicted in the '938 utility application fail to provide adequate written description support for the blanket with a 6x5 array of rectangular segments claimed in the '345 design application ....... 17

   C.   Floyd's Arguments Fail to Demonstrate that the Board Erred or that the Board's Decision Is Not Supported by Substantial Evidence ................... 21

      1.  The Board's finding that the figures in the '938 utility application fail to provide written description support for the design claimed in the '345 design application comports with 35 U.S.C. §§ 112 and 120 .................... 22

      2.  Neither figures 1 and 1A nor claim language reciting that the cooling blanket disclosed in the '938 utility application has a plurality of "individualized compartments" provides written description support for the design claimed in the '345 design application ...................................... 25

i

3. Floyd's attempt to limit the ornamentality of the claimed blanket design to just the "rectilinear configuration" of the blankets depicted in figures 1 and 1A is contrary to design patent law ...................................................30

**V. CONCLUSION** ......................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) ........................................12, 13, 24, 27

*In re Bayer Aktiengesellschaft*,
    488 F.3d 960 (Fed. Cir. 2007) ...........................................................................12

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
    661 F.3d 629 (Fed. Cir. 2011) .....................................................................28, 29

*Biacore v. Thermo Bioanalysis Corp.*,
    79 F. Supp. 2d 422 (D. Del. 1999), *aff'd sub nom. Biacore AB v.*
    *Thermo Bioanalysis Corp.*, 30 F. App'x 994 (Fed. Cir. 2002)............................9

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
    80 F.4th 1363 (Fed. Cir. 2023) ..........................................................................32

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)............................................................................................11

*In re Daniels*,
    144 F.3d 1452 (Fed. Cir. 1998) ..................................................................*passim*

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015) .........................................................................32

*Evans v. Eaton*,
    20 U.S. (7 Wheat.) 356 (1822) ..........................................................................17

*General Hospital Corp. v. Sienna Biopharms., Inc.*,
    888 F.3d 1368 (Fed. Cir. 2018) .....................................................................26, 28

*In re Google Technology Holdings, LLC*,
    980 F.3d 858 (Fed. Cir. 2020) ...........................................................................31

*Hyatt v. Boone*,
    146 F.3d 1348 (Fed. Cir. 1998) .........................................................................30

*Indivior UK Ltd. v. Dr. Reddy's Lab'ys S.A.*,
  18 F.4th 1323 (Fed. Cir. 2021) ...........................................................19, 20, 25, 26

*In re Jolley*,
  308 F.3d 1317 (Fed. Cir. 2002) ...........................................................12

*Lockwood v. Am. Airlines*,
  107 F.3d 1565 (Fed. Cir. 1997) ...........................................................27

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
  923 F.3d 1368 (Fed. Cir. 2019) ...........................................................27

*In re Owens*,
  710 F.3d 1362 (Fed. Cir. 2013) ...........................................................*passim*

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ...........................................................26

*Purdue Pharma L.P. v. Faulding Inc.*,
  230 F.3d 1320 (Fed. Cir. 2000) ...........................................................26

*Racing Strollers, Inc. v. TRI Industries, Inc.*,
  878 F.2d 1418 (Fed. Cir. 1989) (en banc) ...........................................................24

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998) ...........................................................28

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*,
  264 F.3d 1111 (Fed. Cir. 2001) ...........................................................28, 29

*Vas-Cath Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991) ...........................................................9, 16, 17

*In re Watts*,
  354 F.3d 1362 (Fed. Cir. 2004) ...........................................................11, 21, 31

**Statutes**

5 U.S.C. § 706(2)(E) ...........................................................11

35 U.S.C. § 102(a)(1) ...........................................................6

35 U.S.C. § 112 ...........................................................*passim*

iv

35 U.S.C. § 120 ................................................................................*passim*

35 U.S.C. § 171 ...............................................................10, 13, 22, 23

**Other Authorities**

37 C.F.R. § 1.154(b)(6) ........................................................................3

MPEP § 1502 ...............................................................................23, 24

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Patent Trial and Appeal Board ("Board") of the United States Patent and Trademark Office in connection with the patent application at issue in this appeal that has previously been before this Court.  The Director also is unaware of any other case pending in this or any other court that will directly affect, or directly be affected by, the Court's decision in this appeal.

## I.   STATEMENT OF THE ISSUE

To claim the benefit of an earlier application's filing date, the applicant of a claimed design must prove that the earlier application demonstrates that the inventor was in possession of the claimed design at the time of the earlier filing. For design claims, one looks to the drawings of the earlier application for evidence of possession of the subject matter claimed in the later application.

Here, Appellant Floyd (hereinafter "Floyd") seeks to establish possession and an earlier effective filing date for the design claimed in its design application for a cooling blanket with a 6x5 rectangular array of compartments as shown below:



**FIG.1**

The Board found that the earlier utility application—including its drawings of cooling blankets with rectangular array configurations different than the 6x5 array configuration in the design claim—failed to provide the visual appearance or ornamental design of the cooling blanket with the 6x5 array configuration claimed in the design application.  Thus, the Board found that the earlier utility application

failed to convey that the inventor was in possession of the particular blanket design claimed in the design application and determined the claimed design was not entitled to the effective filing date of the earlier utility application.

Based on its priority determination, the Board determined that the earlier utility application was prior art. The Board then affirmed the Examiner's anticipation rejection based on the earlier utility application. Floyd admits "if the claimed design of the '345 design application is found to not be entitled to the filing date of Appellant's earlier '938 application, then the claimed design of Appellant's '345 design application would be anticipated" by Appellant's earlier utility application. Br. at 2-3.[1]

The sole issue on appeal is whether substantial evidence supports the Board's finding that the earlier utility application's disclosure fails to provide written description support for the blanket with a 6x5 array claimed in the later design application.

## II.    STATEMENT OF THE CASE

This appeal arises from *ex parte* examination of a design patent application. A design patent contains a single claim, and the drawings serve as the written

---

[1] Citations to the Joint Appendix are designated as "Appx__," and citations to Appellant's Corrected Brief are designated as "Br. at __."

description.  37 C.F.R. § 1.154(b)(6); *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998).

### A.    The '345 Design Patent Application

U.S. Design Patent Application No. 29/685,345 ("the '345 design application") was filed by Floyd on March 27, 2019 and has the amended title "Cooling Blanket."  Appx20-25; Appx70-71.  The '345 design application claims the benefit of U.S. Utility Patent Application No. 15/004,938, filed on January 23, 2016, and published as U.S. Patent Application Publication No. US 2017/0027744 A1 on February 2, 2017 (hereinafter "the '938 utility application").  *See* Appx119-124; *see also* Appx20.  The claim is directed to, and the figures of the '345 design application depict, a cooling blanket with a 6x5 array of rectangular segments. More specifically, the '345 design application states that the claim is for the "ornamental design for a Cooling Blanket, as shown and described" in the following four figures.  Appx23-25; Appx60-61 (replacement sheets).

3



FIG.1



FIG.2



**FIG.3**



**FIG.4**

## B.    The '938 Utility Patent Application

The '938 utility application (Appx119-124) describes a cooling blanket for use on humans or animals to provide immediate, on-site prevention or treatment of hyperthermia and "deleterious medical events, such as cardiac arrest, by wrapping the body's core in immediate cold therapy."  Appx123 [¶ 0011].  The cooling blanket includes a ventilation system constructed of a series of openings **13** in the seams **11** of the blanket that allows a body to cool "with sweat evaporation and by

4

preventing a layer of body-warmed air from being trapped in the blanket's seams." Appx122 [¶ 0010]; Appx123 [¶¶ 0023-24]. The seams **11** define and form individualized compartments **15** that hold a cooling medium **19** that remains pliable enough to conform to the core body shape of a human or animal. Appx123 [¶¶ 0010, 0020-22].

The specification of the '938 utility application depicts the disclosed cooling blanket in several figures. Appx120-121. Figures 1 and 1A (Appx120) are provided below:



The Brief Description of the Drawings describes Figures 1 and 1A as "[a] top view of the cooling blanket" and "[a] top view of a cooling blanket in a different configuration," respectively. Appx123 [¶¶ 0012-13]. The specification explains that "[a]s illustrated in FIGS. 1 & 1A, the embodiment can be made in any size

5

suitable for cooling the body core, or entire body, of any human or animal." *Id.* [¶ 0025]. The specification also states that the descriptions contained therein "should not be construed as limitations on the scope" and that many other variations are possible, including "the series of said seams can take a configuration of curves instead of right angles." *Id.* [¶ 0027]. Further, the specification states, and claim limitation 1c recites, that the width of the seams can vary to incorporate "a series of ventilation[] openings **13a** of any size or shape." *Id.* [¶ 0023].

### C.    The Board's Decision

The Board affirmed the Examiner's anticipation rejection under 35 U.S.C. § 102(a)(1). Appx1-10; Appx78-92. In affirming, the Board agreed with the Examiner that the '345 design application was not entitled to the filing date of the '938 utility application, to which it claimed priority as a divisional application, but was instead only entitled to its actual filing date. Appx6; Appx8-9.

Specifically, the Board agreed with the Examiner that the '938 utility application does not provide adequate written description support for the cooling blanket design claimed in the later-filed '345 design application. Appx4-7; Appx82-86. In the final rejection (Appx47-53), the Examiner determined that "Figure 1 of this ['345 design] application shows a blanket with a 6x5 array of rectangular segments, which was 'not expressly shown' in the '938 application, and is, therefore, new matter." Appx4 (quoting Appx50).

6

Regarding the disclosure of the '938 utility application, the Board observed that Figure 1 depicts the top view of a cooling blanket with 6 rows and 6 columns of rectangular segments. Appx5 (citing Appx123 [¶ 0012]). The Board observed that Figure 1A depicts the top view of a cooling blanket in a different configuration with 6 rows and 4 columns of square segments. *Id.* (citing Appx123 [¶ 0013]). The Board found that the disclosure of the earlier '938 utility application failed to provide "any detail as to the visual impression or ornamental design of the presently claimed cooling blanket, much less a cooling blanket having the claimed 6x5 array of rectangular segments." Appx6. The Board also found that the drawings of the 6x6 and 6x4 array configurations in the '938 utility application "are not sufficient to narrow down those options to a specific visual impression of a blanket of any other configuration other than those explicitly shown." *Id.* (citing *In re Owens*, 710 F.3d 1362, 1369 (Fed. Cir. 2013)).

The Board was unpersuaded by Floyd's argument that the broad disclosure in the specification of the '938 utility patent that "[t]he embodiment can be made in any size suitable for cooling the body core, or entire body, of any human or animal," Appx123 [¶ 0025], provided support for the claimed 6x5 array. Appx5. Rather, the Board found that the cited text "encompasses any number of array configurations having any visual impression" and "could mean that the rectangular sections are of a different size, as opposed to the blanket having a different number

7

of rectangular sections." Appx6. In sum, the Board agreed with the Examiner that "nothing in the '938 application leads to the precise visual appearance represented in the 6x5 array configuration claimed" in the '345 design application, and thus, "the '938 application does not convey with reasonable clarity that, as of the filing date sought by Floyd, the inventor was in possession of the particular blanket design now claimed." *Id.* The Board therefore found that the effective filing date of the design claimed in the '345 design application is March 27, 2019, the actual filing date of the application, and thus the '938 utility application is properly considered prior art against it. Appx6-7.

Given its determination of the effective filing date of the '345 design application, the Board affirmed the Examiner's anticipation rejection based on US2017/0027744, the pre-grant publication of the '938 utility application. Appx2-3 & n.3; Appx7-8. The Board found that the cooling blanket depicted in the earlier '938 utility application anticipated the cooling blanket design claimed in the '345 design application, agreeing with the Examiner that "the standard for evaluating whether a claim obtains the benefit of an earlier filing date"—*viz.*, whether Floyd had possession of the claimed design—"is different than the standard for evaluating anticipation"—*viz.*, whether, in the eye of an ordinary observer two designs are substantially the same. Appx7 (case citations omitted). The Board noted that the caselaw recognizes the "subtle distinction between a written

8

description adequate to *support* a claim under § 112 and a written description

sufficient to *anticipate* its subject matter under § 102(b)." Appx7-8 (quoting *Vas-*

*Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).[2]  The Board was

"not persuaded of error in the Examiner's anticipation rejection" where the

Examiner had found the appearance of the cooling blanket in the '938 application

is substantially the same as that of the claimed design under the ordinary observer

test and Floyd had "not point[ed] to any particular differences between the '938

application and the claimed subject matter such that they are not substantially the

same for purposes of the ordinary observer test." Appx7-8 (citing Appx51).

Thereafter, Floyd appealed the Board's decision to this Court.

## III.    SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's determination that the design

claimed in the '345 design application—a cooling blanket having a 6x5 array of

rectangular compartments—is not entitled to the effective filing date of the '938

---

[2] That distinction—which has been confirmed repeatedly in the case law, *see, e.g.,* *Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422, 467 (D. Del. 1999) (collecting cases), *aff'd sub nom. Biacore AB v. Thermo Bioanalysis Corp.*, 30 F. App'x 994 (Fed. Cir. 2002)—supports the Board's findings of both anticipation by, and lack of adequate written description support under § 112 in, the '938 utility application.  However, Floyd does not challenge the Board's anticipation findings and concedes that "if the claimed design of the '345 design application is found not to be entitled to the filing date of Appellant's earlier '938 application, then the claimed design of Appellant's '345 design application would be anticipated" by Floyd's earlier utility application.  Br. at 2-3.  Therefore, anticipation is not at issue before this Court.

utility application due to a lack of adequate written description in the '938 application. When analyzing written description for design claims, the review focuses on the drawings of the earlier application to determine if the subject matter claimed in the later application is disclosed in the earlier application. Figures 1 and 1A of the earlier '938 utility application fail to depict the 6x5 array of rectangular compartments claimed in the '345 design application. The broader language in the specification of the '938 utility application merely indicates that the disclosed cooling blankets could be "made in any size" to fit the body core or entire body of any human or animal, and does not refer to any other arrays. Based on the figures and disclosure in the '938 utility application, an artisan of ordinary skill would not have perceived Floyd to be in possession of the specific claimed design—a cooling blanket having a 6x5 array of rectangular compartments—as of the effective filing date of the earlier-filed '938 utility application. Thus, the Board correctly determined that the '938 application is prior art to the design claimed in the later '345 design application.

Floyd's arguments fail to demonstrate that the Board erred. First, contrary to Floyd's argument, the Board's finding that the designs illustrated in Figures 1 and 1A of the '938 utility application only provide written description support for the 6x6 and 6x4 arrays actually depicted in the figures comports with the statutory text of 35 U.S.C. §§ 112, 120, and 171 and guidance from the USPTO's Manual of

Patent Examining Procedure (MPEP). Second, Floyd's argument that its claimed blanket design with a 6x5 array is inherently disclosed in the earlier '938 utility application falls short. The language Floyd relies on to attempt to support this argument either demonstrates that the design having the 6x5 array was not contemplated as an aspect of the invention or, at most, renders the claimed design obvious, which is insufficient to support a finding of adequate written description. Third, Floyd's attempt to subdivide the 6x6 and 6x4 arrays of individualized compartments depicted in Figures 1 and 1A of the '938 utility application under the guise of a functionality argument fails both because it was not previously raised, and is thus forfeited, and because it runs counter to this Court's jurisprudence and misapplies the law regarding functionality.

## IV.  ARGUMENT

### A.    Standard of Review

Floyd has the burden to demonstrate the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Whether written description support exists for a claim is a question of fact. *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013). This Court upholds fact findings made by the Board that are supported by substantial evidence. *Id.*; 5 U.S.C. § 706(2)(E). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

11

229 (1938). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)). Thus, this Court has explained that it "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *Jolley*, 308 F.3d at 1320.

B.     **Substantial Evidence Supports the Board's Findings that the '938 Utility Application Does Not Provide Adequate Written Description Support for the Design Claimed in the Later '345 Design Application**

1.     **For design claims, written description must be demonstrated in the designs depicted in the application**

A patent application can claim the benefit of the filing date of an earlier application. 35 U.S.C. § 120. To claim that benefit, one must demonstrate that the invention claimed in the application has written description support in the earlier application. *Id.* Written description support means that "the disclosure of the [earlier] application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the [earlier] filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc); *see also* 35 U.S.C. § 112(a). As this Court has explained, the concept of

12

possession is measured by whether the earlier disclosure "clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented [or designed] what is claimed." *Ariad*, 598 F.3d at 1351 (emphasis omitted). While the written description requirement does not demand the specification recite the claimed subject matter *in haec verba*, a description that merely renders the claimed subject matter obvious does not satisfy the requirement. *Id.* at 1352. These written-description principles apply to both utility and design patents. *Owens*, 710 F.3d at 1366; *see also* 35 U.S.C. § 171.

Because the drawings of a design patent provide the description of the invention, the drawings are "viewed in terms of the 'written description' requirement of § 112," and "when an issue of priority arises under § 120, one looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later application." *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998) (citations omitted); *see also Owens*, 710 F.3d at 1366. Although written-description issues are fact specific, this Court's decisions in the *Daniels* and *Owens* appeals are helpful guideposts demonstrating how factors such as the visibility and presentation of the later-claimed design in the drawings provided in the earlier patent application are key in determining whether the written description requirement of § 112 is satisfied for design claims.

In *Daniels*, the earlier application disclosed the design for a "leecher," a device for capturing leeches, that was decorated with a pattern of leaves (*see* 144 F.3d at 1454), which is shown on the left of the side-by-side comparison below.  In a later application, the applicant sought to establish written-description support in the earlier application for the claimed design of a leecher without the leaf pattern (*see id.* at 1455), which is shown on right of the side-by-side comparison below.



The *Daniels* Court held that the earlier application established possession of the later-claimed design.  *Id.* at 1457.  The leaf ornamentation in the earlier drawing did not obscure the design under it; thus, an artisan of ordinary skill (*i.e.*, a designer) reading the earlier application would see that the inventor was in possession of the later-claimed leecher without the leaf ornamentation at the time the earlier application was filed.  *Id.*

14

On the other hand, in *Owens*, the Court held that the disclosed design of the bottle in the earlier application did not establish possession of the later claimed design. The earlier application in *Owens* disclosed the center-front panel design for a bottle that had an undivided center-front panel (*see* 710 F.3d at 1363; *id.* at 1368), which is reproduced on the left of the side-by-side comparison below. In a later application, the applicant sought to establish written description support in the earlier application for the claimed design for a bottle that included, *inter alia*, the trapezoidal top portion of the center-front panel that was demarcated with a newly-introduced horizontal broken line—identified in yellow highlighting below for clarity—(*see id.* at 1365; *id.* at 1367-68), which is reproduced on the right of the side-by-side comparison below.



*Fig. 2*                    **Fig. 2**

The *Owens* Court found that the drawings in the earlier application did not provide written description support for the later-claimed design, because the inventor could not demonstrate "prior possession of a bottle with a trapezoidal section occupying part, but not all, of the surface area of the center-front panel." *Id.* at 1367-68. The *Owens* Court contrasted the later-claimed bottle design with that of the later-claimed leecher in *Daniels*. While in *Daniels* the later-claimed design was "clearly visible" in the earlier application, in *Owens* the trapezoidal section was nowhere to be seen in the earlier application; in fact, the trapezoidal section could not exist without the addition of a previously unclaimed line to create the bottom of the trapezoid. *Id.* Importantly, the *Owens* Court clarified that an applicant who has been granted a claim to a particular design element cannot then proceed to subdivide that element in subsequent applications however the applicant pleases. *Id.* at 1368.

The focus in *Daniels* and *Owens* on what was presented and visible in the drawings of the earlier application fits hand in glove with a complementary approach to assessing written description support—namely, by asking whether the later-claimed subject matter introduces "new matter." If a later-claimed design introduces new matter, written description support does not exist. *See Vas-Cath*, 935 F.2d at 1565; *see also Owens*, 710 F.3d at 1366. The prohibition against new matter is about public notice, ensuring that the earlier document has put "the public

16

in possession of what the party claims as his own invention . . . to guard against prejudice or injury from the use of an invention [or design] which the party may otherwise innocently suppose not to be patented." *Vas-Cath*, 935 F.2d at 1561 (quoting *Evans v. Eaton*, 20 U.S. (7 Wheat.) 356, 434 (1822)).

> **2.    Substantial evidence supports the Board's findings that the blankets with differing configurations depicted in the '938 utility application fail to provide adequate written description support for the blanket with a 6x5 array of rectangular segments claimed in the '345 design application**

The Board correctly found that the blankets with 6x4 and 6x6 arrays depicted in the figures in the '938 utility application failed to provide sufficient written description to support the blanket with a 6x5 array claimed in the '345 design application.  As this Court has explained, "[i]n the context of design patents, the drawings provide the written description of the invention;" thus, "when an issue of priority arises under § 120 in the context of design patent prosecution, one looks to *the drawings* of the earlier application for disclosure of the subject matter claimed in the later application."  *Owens*, 710 F.3d at 1366 (emphasis added); *see also Daniels*, 144 F.3d at 1456.  Although it is "incorrect [to] hold[] that any change in the design defeats a priority claim as a matter of law," the design claimed in the later application will be considered common to that of the earlier application if it "is clearly visible" and "all details of [the later claimed design] are visible in the drawings of the earlier application."  *Daniels*, 144 F.3d at

1456-57. If such visibility is established, then "it is apparent that the earlier application contains a description of what is claimed in the later application," which in turn reasonably conveys to a skilled artisan (*i.e.*, designer) that the inventor had possession of the later-claimed design at the time the earlier application was filed. *Id.*

Here, it is plain from the record that the later-claimed design for a cooling blanket having a 6x5 array of rectangular compartments is not "clearly visible" in the figures of the earlier '938 utility patent application. It is uncontroverted that the '938 utility application "does not include the words 6x5 array and the drawings do not illustrate a 6x5 array." Appx5 (quoting Appx72-73); Br. at 20. Therefore, the Board rightly determined that the drawings labeled as Figure 1 and Figure 1A of the '938 utility application do not provide "any detail as to the visual impression or ornamental design of the presently claimed cooling blanket, much less a cooling blanket having the claimed 6x5 array of rectangular segments" because "the drawings of the 6x6 and 6x4 array configurations are not sufficient to narrow down those options to a specific visual impression of a blanket of any other configuration other than those explicitly shown." Appx6 (citing *Owens*, 710 F.3d at 1369).

To the extent that this Court looks beyond Figures 1 and 1A of the '938 utility application, the portions of the '938 utility application suggesting a broader scope for the design of the cooling blanket do not support the specifically claimed

design having a 6x5 array.  Those passages merely state that "the embodiment can be made in *any size* suitable for cooling the body core, or entire body, of *any human or animal*."  Appx123 [¶ 0025] (emphasis added).  They further state that the description of the cooling blanket therein "should not be construed as limitations on the scope" and that "[m]any other variations are possible.  For example the series of said seams can take a configuration of curves instead of right angles. . . ."  *Id.* [¶ 0027].  As the Board found, those passages fail to provide "any detail as to the visual impression or ornamental design of the presently claimed cooling blanket [in the '345 design application], much less a cooling blanket having the claimed 6x5 array of rectangular segments" and instead merely indicate that the rectangular segments may be "of a different size."  Appx6.  Therefore, as the Board correctly found, the disclosure fails to "convey with reasonable clarity that, as of the filing date sought by Appellant, the inventor was in possession of the particular blanket design now claimed."  *Id.*

The Board's analysis of the disclosure in the '938 utility application comports with this Court's written-description jurisprudence.  For example, to satisfy the written description requirement in cases where a range is claimed, "a skilled artisan must be able to reasonably discern a disclosure of that range."  *Indivior UK Ltd. v. Dr. Reddy's Lab'ys S.A.*, 18 F.4th 1323, 1328 (Fed. Cir. 2021).  In *Indivior*, the issue was whether the claim language in a child application reciting

a polymer with the range of "about 40 wt % to about 60 wt %" had written description support in an earlier parent application. 18 F.4th at 1325. Indivior argued that the combined disclosures in the parent's specification of (1) examples having 48.2 wt % and 58.6 wt % and (2) a statement that the film "contains a film forming polymer in an amount of at least 25% by weight" provided adequate written description support for the later-claimed range. *Id.* at 1326-27. The Court, however, found that the written description requirement was not satisfied. *Id.* at 1328. Because the claimed range did not appear in the prior application and the prior application contained contrary statements such as "the film *may contain any desired level* of . . . polymer," the Court held that such disclosure was unclear and failed to evidence that the later-claimed range was contemplated as an aspect of the invention for purposes of the written description requirement. *Id.* at 1328-1329 (emphasis added). Rather, the Court noted that "these values do not constitute ranges; they are only specific, particular examples." *Id.* at 1329.

While not in the context of a design patent priority claim, such analysis informs this case because Floyd is, in effect, arguing that the combination of the two examples of blankets depicted in Figures 1 and 1A and broad language in the '938 utility application shows possession of a range of sizes of rectangular arrays, including the claimed 6x5 array. *See* Br. at 20-21. However, Floyd's argument fails because, just as in *Indivior*, (1) the claimed 6x5 array does not appear in the

earlier '938 utility application—a fact that Appellant concedes, *see* Br. at 20—(2) the broad language in the specification includes inconsistent statements that embodiments "can be made in any size" or with a series of seams having "a configuration of curves instead of right angles, *see* Appx123 [¶¶ 0025, 0027], and (3) the disclosed designs of a blanket with a 6x6 array of <u>rectilinear</u> compartments and a blanket in a different configuration with a 6x4 array of <u>square</u> compartments (*see* Appx5 (describing Figures 1 and 1A)) are not endpoints of a range, but rather just specific, particular examples.

Moreover, the Board's decision is further buttressed by the Examiner's findings that Floyd's 6x5 array design claimed in the '345 design application introduced new matter into the disclosure of the earlier utility application. *See, e.g.*, Appx84-85; Appx65-66; Appx49-50.

### C.    Floyd's Arguments Fail to Demonstrate that the Board Erred or that the Board's Decision Is Not Supported by Substantial Evidence

Floyd has the burden to demonstrate the Board committed reversible error. *Watts*, 354 F.3d at 1369.  In its opening brief, Floyd appears to press three related arguments in an attempt to demonstrate error in the Board's decision.  Br. 14-22. First, Floyd argues that the Board's finding that the designs illustrated in Figures 1 and 1A of the '938 utility application only provide written description support for the 6x6 and 6x4 arrays actually depicted in the figures is erroneous and contrary to

the statutory text of 35 U.S.C. §§ 112, 120, and 171 and MPEP guidance.  Br. at

14-19.  Second, Floyd argues that, despite not illustrating a cooling blanket design

having a 6x5 array of rectangular segments in the earlier utility application, this

Court's caselaw supports a finding that Floyd nevertheless was in possession of the

claimed 6x5 array design when the earlier application was filed.  Br. at 19-21.

Third, Floyd argues that the precise number of compartments in the blankets

disclosed in the figures of the utility application is a functional feature related to

the proposed use of the blanket and should not limit the scope of disclosure as

determined by the Board.  Br. at 21-22.  As discussed below, each of these

arguments misses the mark, and none of them establishes reversible error by the

Board.

      **1.**      **The Board's finding that the figures in the '938 utility application fail to provide written description support for the design claimed in the '345 design application comports with 35 U.S.C. §§ 112 and 120**

Floyd argues that the Board erred by finding that Figures 1 and 1A of the

'938 utility application demonstrate that the inventor had possession of only the

depicted cooling blankets having a 6x6 array of rectangular compartments and 6x4

array of square compartments in determining that the application fails to provide

adequate written description support for the cooling blanket having a 6x5 array of

rectangular compartments claimed in the later '345 design application.  Br. at 14-

19.  More specifically, Floyd argues that the Board's decision to limit the scope of

22

the written description support to the designs actually depicted in the figures of the '938 utility application is not supported by the statutory text of 35 U.S.C. §§ 112, 120, and 171, the USPTO's guidance provided in MPEP § 1502, or the broad language describing the cooling blanket in the '938 utility application.  Br. at 19.  Floyd's argument fails for at least two reasons.

First, the Board's finding does not run afoul of any statutory text or MPEP guidance and closely hews to this Court's understanding of 35 U.S.C. §§ 112 and 120.[3]  As discussed *supra* in Section B(1), this Court has held that when issues of priority arise under 35 U.S.C. § 120 in the context of design patents, one looks to the drawings of the earlier application to see whether they provide adequate written description requirement for the design claimed in the later application.  *Owens*, 710 F.3d at 1366; *see also Daniels*, 144 F.3d at 1456 ("It is the drawings of the design patent that provide the description of the invention."); *id.* ("[T]he drawings of the design patent are viewed in terms of the 'written description' requirement of § 112.").  The drawings in an earlier application provide written description support only for later claimed designs that are "clearly visible," *i.e.*, "all details of which are visible in the drawings of the earlier application." *Daniels*, 144 F.3d at 1456-

---

[3] Notably, Floyd does not identify any particular language in the cited statutes or MPEP section that the Board's decision allegedly contradicts.  Nevertheless, by following this Court's decisions in *Owens* and *Daniels*, the Board's decision is consistent with the statutory and MPEP provisions.

57.  One must rely on the drawings for written description support because "[t]he design of an article consists of the *visual characteristics embodied in or applied to an article*."  MPEP § 1502 (emphasis added).  Undepicted designs that happen to fall within the scope of broad language in the specification—for example, statements that embodiments "can be made in any size suitable for cooling the body core, or entire body, of any human or animal" or may have "individualized compartments in plurality" (*see* Appx123 [¶ 0025], claim 1a)—are not "visible in the drawings" and do not clearly allow skilled artisans to recognize that the inventor invented the design that is later claimed.  *Owens*, 710 F.3d at 1368 (quoting *Ariad*, 598 F.3d at 1351); *see also Racing Strollers, Inc. v. TRI Industries, Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989) (en banc) ("[M]eeting the remaining requirements of § 112 is, in the case of an ornamental design, simply a question of whether the earlier application contains illustrations, whatever form they may take, depicting the ornamental design illustrated in the later application and claimed therein").  Here, Floyd has conceded that the '938 utility application fails to illustrate or otherwise even mention the cooling blanket having a 6x5 array that is depicted and claimed in the '345 design application.  *See* Br. at 20.

Second, Floyd's reliance on the broad language in the specification of the '938 utility application that "[m]any other variations are possible" and the recitation in claim 1 that the embodiment comprises a plurality of individualized

compartments misses the mark. Indeed, as discussed in Section B(2) *supra*, that language (especially when paired with the absence of any other description of the claimed subject matter, as is the case here) does not provide support for Floyd's position. While the language discusses various design possibilities, it does not evidence that the particular later-claimed design (here, the blanket with a 6x5 array of rectangular compartments) was contemplated as an aspect of the earlier invention, *i.e.*, that the inventor possessed the later-claimed design at the time the earlier '938 utility application was filed. *See Indivior UK*, 18 F.4th at 1328-29.

> **2.      Neither figures 1 and 1A nor claim language reciting that the cooling blanket disclosed in the '938 utility application has a plurality of "individualized compartments" provides written description support for the design claimed in the '345 design application**

Floyd next argues that, because the '938 utility application depicts blankets with arrays of 6x6 and 6x4 sizes, it shows that Floyd was in possession of "the concept of a 6x5 array of rectangles" because the 6x6 and 6x4 arrays "lie in adjacent size juxtaposition with respect to a 6x5 array." Br. at 20-21. Other than noting that this Court has held that an earlier "disclosure does not have to provide *in haec verba* support in order to satisfy the written description requirement" for later-claimed subject matter, such as the blanket design having a 6x5 array of rectangular compartments, Floyd does not explain why the 6x5 array's adjacency to the 6x6 and 6x4 arrays demonstrates Floyd's earlier possession of the 6x5 array.

25

Br. at 21 (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008)).

To the extent Floyd's argument is that the disclosure of the 6x6 and 6x4 arrays provides written description support for anything within the range between them (including a 6x5 array), it cannot prevail. As this Court has explained, "[t]he disclosure of a broad range of values does not by itself provide written description support for a particular value within that range." *General Hospital Corp. v. Sienna Biopharms., Inc.*, 888 F.3d 1368, 1372 (Fed. Cir. 2018). In other words, "one cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention." *Id.* (quoting *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326 (Fed. Cir. 2000)). Further, the language in the specification of the '938 utility application describing various design variations— including making the blanket in any size suitable to cool any human or animal— does not provide written description support for the particular 6x5 array claimed. *See, e.g., Indivior UK*, 18 F.4th at 1328-29; *see also* Section B(2) *supra*.[4]

---

[4] In addition to finding that the designs depicted in Figures 1 and 1A differ in the size of the array, the Board also found that they have differently shaped compartments—the compartments illustrated in Figure 1 are rectangular and those illustrated in Figure 1A are square. Appx5. Thus, when the overall appearance of the designs shown in Figures 1 and 1A are considered, it is unclear even whether they really provide proper endpoints for Floyd's purported range.

To the extent Floyd's argument is that similarity in size between the later-claimed 6x5 array and the earlier-depicted 6x6 and 6x4 arrays demonstrates possession of the claimed 6x5 array design at the time the '938 utility application was filed, such an argument fails because it, in effect, posits that the claimed 6x5 array would have been obvious in view of the disclosed 6x6 and 6x4 arrays, which this Court has repeatedly rejected as a proper basis for written description support. *See Ariad*, 598 F.3d at 1352 ("And while the description requirement does not demand . . . that the specification recite the claimed invention *in haec verba*, a description that merely renders the invention obvious does not satisfy the requirement."); *see also Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

Floyd also argues that the language in claim 1 of the '938 utility application reciting that the cooling blanket comprises a plurality of "individualized compartments" demonstrates that the application "'inherently' discloses a 6x5 array" because a plurality of individualized compartments would necessarily include a 6x5 array. Br. at 21. This Court has explained that "under a narrow set of circumstances, the written description requirement may be satisfied without an explicit disclosure if the claimed features are necessarily inherent in what is expressly described." *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1382-83 (Fed. Cir. 2019) (citation string

27

omitted).  The disclosure of blankets having a plurality of "individualized

compartments" in the '938 utility application does not fall under such a narrow set

of circumstances.

Inherency may not be established by probabilities or possibilities, and the

mere fact that a certain thing may result from a given set of circumstances is not

sufficient.  *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir.

2011).  For a disclosure to be inherent, "the missing descriptive matter must

necessarily be present in the [original] application's specification such that one

skilled in the art would recognize such a disclosure."  *TurboCare Div. of Demag*

*Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1119 (Fed.

Cir. 2001) (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998)).

And, as discussed above, "[t]he disclosure of a broad range of values does not by

itself provide written description support for a particular value within that range."

*General Hospital*, 888 F.3d at 1372.  Here, Floyd again relies on the broad

recitation of blankets having a plurality of individualized compartments as

providing written description support for the particular design of a blanket having a

6x5 array of compartments claimed in the later '345 design application.  However,

while a skilled designer constructing a cooling blanket as disclosed in the '938

utility application with a plurality of individualized compartments may *possibly*

select a design having a 6x5 array from the multitude of designs having a plurality

28

of compartments, the designer would not *necessarily* select the claimed design having a 6x5 array.  Thus, Floyd fails to establish that the '938 utility application provides inherent disclosure of the particular 6x5 array claimed in the '345 design application.  *Bettcher*, 661 F.3d at 639; *TurboCare*, 264 F.3d at 1119.

Setting aside the question of whether the "plurality of individualized compartments" language can inherently disclose a cooling blanket with a 6x5 array of rectangular compartments, Floyd's argument additionally fails because the highlighted disclosure neither depicts nor reasonably demonstrates that the inventor had possession of the claimed 6x5 array design.  As explained in Section B(1) above, the drawings depicting the appearance of an invention provide the written description of the invention in the context of design patents.  *See, e.g.*, *Owens*, 710 F.3d at 1366; *Daniels*, 144 F.3d at 1456.  As such, a textual description of a design alone cannot provide adequate written description support because it fails to demonstrate that all details of the later-claimed design are "clearly visible" in the earlier application.  *Daniels*, 144 F.3d at 1456-57.  For the same reason, even when the "plurality of individualized compartments" language is read in conjunction with the two 6x6 and 6x4 array designs shown in the '938 utility application, it still does not make all ornamental details of the later-claimed 6x5 array design "clearly visible" in the '938 utility application.  Floyd is correct that claim language may provide or contribute to compliance with 35 U.S.C. § 112,

29

*see* Br. at 20 (quoting *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998));

however, for design patents, this proposition does not meaningfully alter the

analysis because the drawings provide the written description support for the

claimed design, and merely stating that the article may have more or less (*i.e.*, a

plurality) of a particular feature does not establish possession of a specific design

with a particular appearance having more or less of that feature.

> **3.    Floyd's attempt to limit the ornamentality of the claimed blanket design to just the "rectilinear configuration" of the blankets depicted in figures 1 and 1A is contrary to design patent law**

Floyd argues that this Court should disregard the number of individualized

compartments actually depicted in the arrays of the blankets shown in Figures 1

and 1A because they are "an element of functionality related to providing a blanket

of sufficient size to address a proposed use."  Br. at 22.  Instead, Floyd urges this

Court to focus on the "rectilinear configurations" of the blankets—namely, the

"square rectilinear configuration" of the blanket shown in Figure 1 and the

"rectangular rectilinear configuration" of the blanket shown in Figure 1A.  *Id.*

Floyd's argument is without avail for at least three reasons.  First, Floyd has

forfeited this argument by failing to raise it before the Board.  Second, this Court

has previously rejected such attempts to selectively manipulate earlier-disclosed

designs in later-filed applications.  Third, the array patterns disclosed in the figures

are not functional and may not be disregarded as such.

Floyd did not raise this argument regarding alleged functionality before the Board, *see* Appx70-77, and thus it is forfeited. *Watts*, 354 F.3d at 1367-68; *In re Google Technology Holdings, LLC*, 980 F.3d 858, 863-864 (Fed. Cir. 2020) (declining to entertain argument not raised before the Board).

The argument also fails on the merits. Floyd cannot carve up the earlier-disclosed blanket designs in the manner it tries to do here. Floyd attempts to disclaim or remove a single column of individualized compartments from the earlier-disclosed blanket having a 6x6 array of rectangular compartments to arrive at the later-claimed blanket having a 6x5 array of rectangular compartments. But, an applicant, having disclosed a design with a particular design element, may not proceed to subdivide that element in subsequent design patent applications however the applicant pleases. *Owens*, 710 F.3d at 1368. Like the unsuccessful applicant in *Owens*, Floyd here tries to claim just a portion of the array depicted in the earlier-disclosed blanket. *Id.* As the Board properly found, there is nothing in the disclosure of the '938 utility patent application that suggests the specific 6x5 portion of the depicted array is "uniquely patentable." *Id.*; *see also* Appx6. Because there is nothing in the disclosure of the '938 utility application to direct an ordinarily skilled artisan to the later-claimed 6x5 array pattern from the 6x6 and 6x4 array patterns depicted in Figures 1 and 1A of the '938 utility application, this

31

Court should similarly affirm the Board's decision as being supported by substantial evidence. *Id.*

Floyd's argument must also yield because the depicted arrays of individualized compartments are not functional. At bottom, Floyd confuses the function of the article of manufacture in this case (the cooling blanket) with the functionality of the design of the article, which this Court has cautioned against. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1380 (Fed. Cir. 2023). The particular size and number of compartments in the array are not "dictated by its function," as is required for a functionality analysis. Instead, the '938 utility application expressly discloses that the individualized compartments within a given blanket can be constructed with alternative designs—*i.e.*, in different shapes and sizes depending on the seam design. *See* Appx123 (¶¶ [0027] (stating that "seams can take a configuration of curves instead of right angles"), [0023] (stating that "a series of ventilation openings **13a** of any size or shape are incorporated into the seams **11**" which claim 1c states "are made wide enough to support said openings. . ."). This disclosure of alternative designs is "an important—if not dispositive—factor" in determining that the depicted individualized compartments are not functional. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329-30 (Fed. Cir. 2015). Floyd's argument is further flawed because it ignores the overall appearance of the blanket

design viewed in its entirety while focusing on the alleged functionality of elements of the disclosed design, which is improper. *Id.* at 1329.

Accordingly, the Board rightly determined that the '345 design application is not entitled to claim priority to the '938 utility application and its effective filing date is the actual filing date of the '345 design application.  Thus, the Board also correctly determined that, given the Examiner's uncontroverted finding that the appearance of the cooling blanket depicted in the '938 utility application is substantially the same as that of the claimed design under the ordinary observer test, the '938 application anticipates the design claimed in the '345 design application.

## V.     CONCLUSION

Substantial evidence supports the Board's finding that the '938 utility application does not convey with reasonable clarity that, at the time of the '938 application's filing, Floyd was in possession of the particular blanket design with a 6x5 array claimed in the '345 design application.  This Court should, therefore, affirm the Board's determination that the '345 design application is not entitled to the effective filing date of the '938 utility application.

Respectfully submitted,

March 21, 2024
/s/ Brian Racilla

FARHEENA Y. RASHEED
  *Acting Solicitor*
AMY J. NELSON
  *Acting Deputy Solicitor*
WILLIAM LAMARCA
*Senior Counsel for IP Litigation*
BRIAN RACILLA
  *Associate Solicitor*

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
Office of the Solicitor – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

**CERTIFICATE OF COMPLIANCE**

I certify pursuant to Federal Rule of Appellate Procedure 32(a)(7) that the

foregoing BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES

PATENT AND TRADEMARK OFFICE complies with the type-volume

limitation.  The total number of words in the foregoing brief, excluding the table of

contents and table of authorities, is 7,572 as measured by the word-processing

software used to prepare this brief.


Dated:  March 21, 2024                Respectfully,

                                      /s/ *Brian Racilla*
                                      Brian Racilla
                                      Associate Solicitor
                                      U.S. Patent and Trademark Office