2023-2395
(United States Patent and Trademark Office
Application Serial Number 29/685,345)

---

*UNITED STATES COURT OF APPEALS*
*for the*
*FEDERAL CIRCUIT*

---

IN RE BONNIE IRIS McDONALD FLOYD
*Appellant*

---

Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board
Jennifer S. Bisk, Administrative Patent Judge

---

REPLY BRIEF FOR APPELLANT

Michael Drew
Attorney at Law
1814 SmokeRise Summit
Stone Mountain, GA 30087
(770) 714-6747

*Attorney for Appellant*

April 11, 2024

---

TABLE OF CONTENTS

Page

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ..................................................................... iii

STATUTES AND RULES .........................................................................iv

I.    INTRODUCTION  .........................................................................1

II.   RECENT DECISION OF THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT  .............................................................1

III.  CONCLUSION .............................................................................7


Form 19 – CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATIONS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Indivior UK Ltd. v. Dr. Reddy's Laboratories S.A.*, 18 F.4th 1323 (Fed. Cir. 2021) ...........................................................................................................6, 7

*In re Wertheim*, 541 F.2d 257(C.C.P.A. 1976)..................................................1, 2, 3

*RAI Strategic Holdings, Inc. v. Philip Morris Prods. S.A.*, 2022-1862 (Fed. Cir. Feb 09, 2024) .....................................................................................................2, 3

*Statutes and Rules*

35 U.S.C. § 112 ................................................................................................ 1, 2, 5

35 U.S.C. § 171 .................................................................................................. 11, 12

37 CFR 1.153(a) ................................................................................................ 11, 12

## I.     INTRODUCTION

This case is an appeal from the decision of the Patent Trial and Appeal Board (PTAB) of the United States Patent and Trademark Office (USPTO). The Appellant in the present case is the Applicant, namely, Bonnie Iris McDonald Floyd, of the Design Patent Application that is the application for which the USPTO rendered an adverse decision, which decision is hereby appealed. Sometimes herein for convenience, the Appellant in the present case will be referred to as "the Applicant." The Appellee in this matter is identified as Director of the United States Patent and Trademark Office.  The Appellee sometimes herein for convenience will be referred to simply as "the Board."

## II.     RECENT DECISION OF THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

A recent decision of the United States Court of Appeals for the Federal Circuit is relevant in the present case.  That decision is *RAI Strategic Holdings, Inc. v. Philip Morris Prods. S.A.*, 2022-1862 (Fed. Cir. Feb 09, 2024), sometimes herein for convenience referred to as "*RAI*." In *RAI*, the Appellant in that case, RAI Strategic Holdings, Inc., appealed the final decision of the USPTO Patent Trial and Appeal Board (for convenience often referred to as "the Board" in both this Reply Brief as well as Applicant's Principal Brief) in a post-grant review (PGR) that

invalidated certain claims of RAI Strategic Holdings, Inc. Patent No. 10,492,542

("the '542 patent"). The Board held that the claims challenged in the PGR were

obvious and lacked written description.  The part of the decision that dealt with the

issue of adequacy of written description is applicable in the present case.

The '542 patent was directed to SMOKING ARTICLES AND USE

THEREOF FOR YIELDING INHALATION MATERIALS, or, more colloquially,

"e-cigarettes." The adequacy of written description issue related to claims 10 and

27 that recited the element "wherein the heating member is present on the heating

projection along a segment having a length of about 75% to about 85% of a length

of the disposable aerosol forming substance." The claims featuring this element

were challenged in the PGR for lacking written description support in the '542

application under 35 U.S.C. § 112.  The Board agreed with the PGR challenger and

found that claims 10 and 27 lacked written support under 35 U.S.C. § 112.  The

Federal Circuit reversed the decision of the Board.

Claims 10 and 27 were directed to a component of the e-cigarette know as a

"heating member." The claimed range of the length of the heating member was at

the heart of the issue. In relevant part, claims 10 and 27 recited  "heating member

… present on the heating projection along a segment having a length of about 75%

to about 85% of a length of the disposable aerosol forming substance." ('542

patent). The PGR petitioner agreed that and the Board found that the specification

of the '542 patent disclosed heating members having ranges of lengths of "about 75% to about 125%," "about 80% to about 120%, about 85% to about 115%, or about 90% to about 110%" of the length of the inhalable substance medium. However, the PGR petitioner argued that and the Board agreed that the claimed range of "about 75% to about 85%" was not supported by the written description of the '542 patent because "the claimed range [was] different from and substantially narrower than the ranges disclosed in the specification." (*RAI* , pages 3-4). The *RAI* petitioner asserted that "while the specification describes ranges such as 75% to 125%, 80% to 120%, 85% to 115%, and 90% to 110%, it does not disclose a heater length range with an upper limit of 85%." RAI, the owner of the'542 patent, "countered that the specification provides written description support because it teaches heating length embodiments at both ends of the claim range, pointing to the 75% to 125% and 85% to the 110% ranges." Nevertheless, "[t]he Board found that the claims lack[ed] written description support because no range contains an upper limit of about 85% making it 'less clear' that the inventors contemplated a range of 'about 75% to about 85%' as part of the invention" and, thus, claims 10 and 27 lacked written description support under 35 U.S.C. § 112. (*RAI*, at pages 4-5).

In *RAI*, this Court noted several legal principles and considerations in vacating the Boards decision, often citing Federal Circuit precedent. Some of these

3

principles and considerations have been discussed in Applicant's Principal Brief and are repeated here in the context of this recent Federal Circuit decision in *RAI*. Some of the principles and considerations discussed by this Court in *RAI* were not emphasized in Applicant's Principal Brief but many of the principles and considerations cited and discussed reinforce and support Applicant's arguments in this case.

The *RAI* Court noted the principle that the written description requirement is met when the disclosure relied on for support reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. This principle is cited in Applicant's Principal Brief.  The Court in *RAI* cited its own precedent regarding written description support in a case from the Court's predecessor court, the Court of Customs and Patent Appeals,  in *In re Wertheim*, 541 F.2d 257(C.C.P.A. 1976). The *Wertheim* case dealt with the issue of adequacy of written disclosure and held that a set of claims that recited a narrower claimed range than the range specified in the specification did have written description support.  As in the *RAI* case, *Wertheim* involved the question of "ranges," wherein the specification disclosed a broader set of ranges than was claimed in the claims. The *RAI* Court cited *Wertheim* in the specific context of ranges in stating the principle that "in determining whether the written description requirement is met, '[m]ere comparison of ranges is not enough,' … instead, 'we

4

must decide whether the invention appellants seek to protect by their claims is part of the invention that appellants have described as theirs in the specification.'" RAI at 6. Again, this Court is noting that the focus of the inquiry is what is described in the specification from which support is sought.

This Court, in *RAI*, noted another principle that Applicant previously cited in Applicant's Principal Brief, namely, that the invention claimed does not have to be described in ipsis verbis in order to satisfy the description requirement of § 112.

Further in *RAI*, this Court noted: "In addition to considering what the specification expressly discloses, we also consider the context of the technology at issue and the knowledge gained by a person of ordinary skill in the art reading the specification." RAI at 9.  In the context of the subject matter of the *RAI* case, this Court went on to note: "Given the predictability of electro-mechanical inventions … and the lack of complexity of the particular claim limitation at issue … 'a lower level of detail is required to satisfy the written description requirement than for unpredictable arts.'"

This Court concluded its consideration of the adequacy of support issue in the context of the "range" subject matter of *RAI*  and the rationale for vacating the Boards decision in finding lack of support in the written disclosure lack by stating:

In other words, under the facts of this particular case,
there is no evidence that the claimed subrange results in a
different invention than the invention disclosed in the
specification. Accordingly, for all of the above reasons,
we conclude that no reasonable fact finder could find that
the claimed subrange is not within the appellant's
invention. In so holding, we note that our determination
is highly factual and dependent on 'the nature of the
invention and the amount of knowledge imparted to those
skilled in the art by the disclosure.'

*RAI* at 10, citing *Wertheim* at 262.

The *RAI* decision is also important because it addresses one of the arguments

put forth by the Board in the Brief for Appellee. The Board in its decision and the

Brief for Appellee cite the case of *Indivior UK Ltd. v. Dr. Reddy's Laboratories

S.A.*, 18 F.4th 1323 (Fed. Cir. 2021). The Board cited *Indivior* as a case where

the written description requirement was not satisfied. The Board cited *Indivior* in

the context of viewing the disclosure of Applicant's '938 application as disclosing

a "range." The Board sets forth in its argument that the Court in *Indivior* found

that a claimed range did not appear in the prior application and that the prior

application contained contrary statements. However, in the context of addressing

the matter of ranges in *RAI*, this Court distinguished *Indivior* in several ways. This Court noted that it has recognized that "[b]roadly articulated rules are particularly inappropriate in this area." This Court went on to further distinguish *Indivior* by noting in particular that in the RAI '542 patent specification there were no inconsistent statements regarding the range. This Court continued to distinguish *Indivior* noting that RAI's '542 patent states a broader range for the length of the heating member and then states narrower ranges which are subsumed within that broader range. This Court closes out distinguishing *Indivior* by noting that "unlike *Indivior*, the invention at issue here [that is, in *RAI*] falls within the predictable arts." The facts cited by this Court in distinguishing *Indivior* are applicable to the present case. The disclosures of the drawings in the '938 utility application are not inconsistent. Both drawings disclose a rectilinear arrangement of rectilinear compartments separated by a cross-work of channels. The text in the '938 application that has been referred to by Applicant is not inconsistent with what is disclosed in the drawings of the '938 application and is not inconsistent with the total disclosure of the '938 specification. And, last, the invention at issue in the present case falls within the "predictive arts."

## III.  CONCLUSION

The principles and considerations cited, and the line of reasoning followed by this Court in deciding *RAI* are applicable to the present case. *RAI* reinforces the legal principles that this case cites, which legal principles Applicant has previously presented in its Principal Brief. With respect to the principles and considerations enumerated by this Court in *RAI* that were not emphasized by Applicant in Applicant's Principal Brief, Applicant believes that those factors further substantiate Applicant's argument that Applicant's '938 utility application provides adequate written support for the claim of Applicant's '345 design application. *RAI* describes additional principles and considerations important in assessing an adequacy of support issue, namely:

- the context of the technology at issue,

- the knowledge gained by a person of ordinary skill in the art reading the specification,

- the predictability of electro-mechanical inventions, and

- the lack of complexity of the particular claim limitation at issue.

The technology at issue in the present case is simple and straight-forward – a cooling blanket. With respect to the ornamental design for the cooling blanket, a person of ordinary skill in the art would not have any difficulty determining the ornamental design disclosed by the specification of the '938 application. The invention in the present case is extremely predictable. It is a simple mechanical

device, namely, a blanket.  The invention has no moving parts and is fairly

unsophisticated  and easy to comprehend. The claim is to the ornamental design for

a Cooling Blanket, as shown and described.

In *RAI*, in reaching its conclusion of finding adequacy of support, this Court

stated that "under the facts of this particular case, there is no evidence that the

claimed subrange results in a different invention than the invention disclosed in the

specification." Likewise, in the present case Applicant does not believe that there is

any evidence to suggest that the ornamental design claimed in the design

application is any different than the ornamental design disclosed in the

specification of the '938 application.  In *RAI*, this Court went on to conclude the

"no reasonable fact finder could find that the claimed subrange [was] not within

the appellant's invention." Applicant believes that similarly, in the present case, no

reasonable fact finder could find that the ornamental design for a Cooling Blanket

claimed in Applicant's '345 design application is not within Applicant's invention

as disclosed in the '938 application.

The Board has taken the position that the '938 application discloses a

different ornamental design for a blanket, or perhaps different ornamental designs

for a blanket, than the ornamental design claimed in the '345 design application.

The embodiments disclosed by the drawings of the '938 application differ

primarily only in the functional feature of the number of compartments shown.

The ornamental design of the embodiment of Applicant's blanket illustrated in Fig. 1 of the '938 application is the same as the ornamental design of the embodiment of Applicant's blanket illustrated in Fig. 1A of the '938 application. That same ornamental design is shown in the drawings of Fig. 1 and Fig. 2 that form the claim of Applicant's '345 design application.

There is no ambiguity in the ornamental design disclosed by the drawings of Applicant's '938 application. If there is any ambiguity to be resolved, it has been introduced by the Patent and trademark Office. Any such imposed ambiguity can be resolved by reviewing the remainder of specification of the '938 application.

Because the present application is a design application, the drawings of the parent application from which priority is claimed is certainly a part of the inquiry as to adequacy of written description. However, there does not appear to be anything in the Patent Code, Regulations, or case law that excludes actual written language that describes what is disclosed. Applicant believes that this is significant in an instance such as the present case where the Board is attempting to read into the ornamental design disclosed by drawings of the '938 application limitations that do not exist. The ornamental blanket design disclosed in Fig. 1 and Fig. 1A of the '938 application is clear and unambiguous. Ambiguity that is sought to be introduced by the Board is easily resolved be reference to other parts of the '938 disclosure whose language is not inconsistent with what is shown in Fig. 1 and Fig

1A of the '938 application.  The Board has not stated a rationale for why the design

disclosed by Fig. 1 of '938 is any different than the design disclosed by Fig. 1A of

'938 or why the design disclosed by either Fig. 1 or Fig. 1A is not the same as the

design claimed in the representations of FIG. 1 and FIG. 2 of the '345 design

application. The Board has focused upon the number of objects in the arrays of the

three designs without a showing of why there is anything inherent in the difference

in the sizes of the arrays that affects the common ornamental design of the three.


*-The Board Has Applied an Erroneous Interpretation of 35 U.S.C. § 171*

The first part of 35 U.S.C. § 171 reads:

> (a)In General.—
> Whoever invents any new, original and ornamental
> design for an article of manufacture may obtain a patent
> therefor, subject to the conditions and requirements of
> this title.

37 CFR 1.153(a) reads in relevant part:

> … No description, other than a reference to the drawing,
> is ordinarily required. The claim shall be in formal terms
> to the ornamental design for the article (specifying name)
> as shown, or as shown and described. More than one
> claim is neither required nor permitted.

Applicant's claim in the '345 application reads: "The ornamental design for

a Cooling Blanket for Humans and Animals, as shown and described."

11

Fig. 1 and Fig. 1A of Applicant's '938 utility application show what they show. Figs. 1 and 2 of Applicant's '345 application show what they show. All of these drawings show an ornamental design for a Cooling Blanket. However, the Board seems to not want to accept a plain, unambiguous reading of 35 U.S.C. § 171 and 37 CFR 1.153(a). The following excerpt is found at page 18 of Brief for Appellee: "Therefore the Board rightly determined that the drawings labeled as Figure 1 and Figure 1A of the '938 utility application do not provide 'any detail as to the visual impression or ornamental design of the presently claimed cooling blanket …'" Page 18 further includes the following language: "the drawings of the 6x6 and 6x4 array configuration are not sufficient to narrow those options to a specific visual impression of a blanket of any other configuration other than those explicitly shown." The Board appears to want to impart a requirement of some sort of threshold of creativity for an ornamental design beyond what patent law requires. However, the drawings show what they show. The visual impression imparted by the drawings is what it is. The visual impression and ornamental design of what is disclosed in the drawings of the '938 utility application are harmonious and consistent with one another and with the drawings of the '345 design application.

The Board appears to work backwards to erroneously characterize the visual impression and ornamental design disclosed in Applicant's '938 utility application

in a way that leads to the conclusion that the '938 disclosure does not provide

adequate support for the '345 claim.


*-Functionality*

      The mathematical precision that the Board has imposed in assessing the

adequacy of written disclosure in the present case is improper for at least two

reasons. First, the mathematical preciseness required by the Board is a functional

consideration as a foundational matter. The disclosure of the '542 patent relates the

size of the array to how the blanket may be employed in use. Any such functional

relevance is not a proper consideration in the context of assessing a design patent.

Second, the Board has based its determination that the written description of the

'938 utility application is inadequate to support the design claimed in the present

design application solely because the disclosure does not contain the exact same

number of items in the array depicted in the design application. The Board did not

offer any explanation as to why the ornamental design disclosed in the '938

application should be limited to only the mathematical configuration of the

exemplary embodiments shown or how the number of items in the arrays of the

embodiment disclosed impact the ornamental design itself. In fact, the Board did

not give an indication as to how the number of items in the array in any way affect

the aesthetic features of the invention of the '938 utility application.

Applicant believes that imposing a functional test relating to a numerical standard imposed in the assessment of adequacy of support for the ornamental design claimed is an issue of law that this Court can review de novo, if necessary.

Respectfully submitted,

/s/ Michael Drew

Attorney for Appellant

1814 SmokeRise Summit
Stone Mountain, GA
(770) 714-6747

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2023-2395</u>

**Short Case Caption:** <u>In re Floyd</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes <u>3293</u> words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>04/11/2024</u>

Signature: <u>/s/Michael Drew</u>

Name: <u>Michael Drew</u>